# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02139-MSK-NYW

LENOX MACLAREN SURGICAL CORPORATION, a Colorado corporation,

Plaintiff,

vs.

MEDTRONIC, INCORPORATED, a Minnesota corporation,
MEDTRONIC SOFAMOR DANEK, INCORPORATED, an Indiana corporation,
MEDTRONIC PS MEDICAL, INCORPORATED, d/b/a MEDTRONIC NEUROLOGIC TECHNOLOGIES, a California corporation,
MEDTRONIC SOFAMOR DANEK CO., LTD., a Japanese corporation,

Defendants.

---

## ORDER ON DEFENDANTS' MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND DEFENDANTS' MOTION FOR LEAVE TO TAKE 30(B)(6) DEPOSITION OF LENOX MCLAREN SURGICAL CORPORATION

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendants Medtronic, Inc.; Medtronic Sofamor Danek, Inc.; Medtronic PS Medical, Inc.; and Medtronic Sofamor Danek Co., Ltd.'s ("Defendants") Motion to Compel Responses to Interrogatories filed on April 23, 2015 [#277] ("Motion to Compel"); and Defendants' Motion for Leave to Take 30(b) (6) Deposition of Lenox McClaren Surgical Corporation [#278] filed on April 23, 2015 ("Motion for Leave") (collectively, the "Motions"). These Motions were referred to this Magistrate Judge pursuant to the Reassignment dated February 9, 2015 [#243], and the Memorandum dated April 24, 2015 [#279]. The court has carefully considered the Motions and related briefing, the arguments of the Parties' counsel at the May 28, 2015 oral argument on the Motions, and the applicable case law. For the reasons discussed below, the court GRANTS IN PART and DENIES IN PART

Defendants' Motion to Compel, and GRANTS IN PART and DENIES IN PART Defendants' Motion for Leave.

## BACKGROUND

**I.     Lenox's Complaint.**

Lenox MacLaren Surgical Corporation ("Lenox") filed its original Complaint in this action on September 1, 2010. [#1]. The following is a recitation of certain relevant allegations from Lenox's Complaint.

Lenox alleges that Medtronic, Incorporated; Medtronic Sofamor Danek, Incorporated; Medtronic PS Medical, Incorporated; and Medtronic Sofamor Danek Co., Ltd. (collectively "Defendants"), in concert with non-party Medtronic Sofamor Danek, USA ("MSD USA"), Inc., engaged in exclusionary conduct targeted at Lenox's "groundbreaking and relatively inexpensive bone mill" (a device used to assist in grinding bone for use in surgical fusion surgeries) that damaged the bone mill market generally and "destroy[ed]" Lenox's "ability to successfully market" Lenox's bone mill solution in particular. [#1 at 1-2]. Before any Medtronic entity brought its own bone mill device to market, MSD USA entered into a distribution agreement providing the "exclusive right to purchase and distribute" Lenox's bone mills to interested hospitals and surgeons. [*Id.*] Instead of "selling" Lenox's bone mills, MSD USA loaned them out. [*Id.* at 2]. According to the Complaint, "Medtronic was simultaneously developing its own competing and costlier bone mill." [*Id.*] Subsequent to the distribution agreement's termination, the Complaint alleges that "Medtronic initiated a disingenuous, improper recall and FDA investigation to tarnish the reputation of the Lenox MacLaren Bone Mill." [*Id.*] On the basis of these and other allegations, Lenox brings claims of actual and attempted monopolization under Section 2 of the Sherman Antitrust Act. [#1].

**II.     Recall Arbitral Proceedings and Relevant Procedural Background.**

The recall led to arbitration proceedings by Lenox against MSD USA. [#277 at 2]. According to the Defendants, apparently invoking claim preclusion, the recall "cannot serve as the basis for Lenox's antitrust claims." [*Id.*] Lenox disagrees, arguing that the Tenth Circuit has already ruled that claim preclusion does not apply, based on the Circuit court's ruling that the instant antitrust claims are not subject to the arbitration agreement that encompassed Lenox's prior claims against MSD USA. [#285 at 1-2].

As might be expected in an antitrust litigation that has spanned nearly five years and spawned well over 300 filings and other docket entries, there has been significant discovery and associated motion practice. The court sets forth a portion of the relevant procedural history below.

On April 17, 2012, Medtronic PS Medical, Inc. served a deposition notice on Lenox containing several topics directed to Lenox's contentions and underlying support for the market share allegations in Lenox's Complaint, and more generally with respect to the market share positions Lenox might subsequently take in this action. [#102 at 6]. Lenox designated Joseph Kovarik, one of its lead counsel from the arbitral proceedings, as its corporate representative as to these topics. [*Id.*]  Unsatisfied with the testimony provided by Mr. Kovarik, Defendants moved for an order from the court requiring "Lenox [to] either identify with specificity the facts that support its market control/share claims or confirm that it has no additional facts," and requiring Lenox to withdraw "outside the scope" objections that Defendants argued were meritless. [#102 at 1-13 & 14].  The court subsequently orally ordered that Linda Lenox (the inventor of the Lenox bone mill device) be designated to testify on behalf of Lenox. [#109 at 19].

On August 30, 2012, Linda Lenox provided 30(b)(6) testimony on a dozen topics related to non-market share issues including, *inter alia*, "the development, design, production, manufacturing, use and sales of the Lenox bone mill." [#278 at 2 & #278-3]. On September 12, 2012, Ms. Lenox was again deposed and provided 30(b)(6) testimony in response to a 22 topic market share notice. [#278 at 2 & #278-9]. Defendants then filed another motion, this time seeking to strike Lenox's market share pleadings from the operative complaint, based on Ms. Lenox's allegedly evasive and/or incomplete testimony at the 30(b)(6) market share deposition. [#129]. The court denied this and other discovery related motions without prejudice, but required Lenox to file a pleading spelling out its market definition and market share allegations in detail, with citations to relevant evidence, in anticipation of a potential responsive motion for summary judgment by Defendants. [#142].

On January 4, 2013, Lenox filed the contemplated submission. [#144]. On February 4, 2014, the Defendants filed their motion for summary judgment. [#168]. On June 21, 2013, subsequent to full briefing and a hearing, the court entered an order granting the motion. [#206]. Plaintiff then appealed.

On August 5, 2014, the Tenth Circuit reversed this court's summary judgment order in an opinion that Lenox docketed with the court that same day. [#218]. The case was re-assigned and re-opened on August 27, 2014. [#221]. On November 5, 2014, the court held a status conference and set (subsequently amended) deadlines for the completion of discovery, and set a final pre-trial conference for June 22, 2015. [#226].

On January 8, 2015, counsel Lenox and counsel for Defendants entered into a letter agreement to govern a number of discovery matters going forward. [#282-2]. In that letter, Lenox agreed to produce a Lenox representative for deposition "on topics related to the damages

Lenox seeks to recover in this case identified by Defendants in a deposition notice." [#283-2 at 3]. Defendants reserved rights to notice additional topics, and Lenox reserved rights to object to other topics. [*Id.*] On February 4, 2015, Defendants served a 46-topic notice targeted at the facts underlying positions Lenox has taken or may take in this litigation, including subject matter involving *inter alia* damages, market definition and market power, and the exclusionary conduct of each named defendant. [#278-4]. On April 23, 2015, Defendants filed their Motion for Leave, requesting "leave of court to take a deposition of Lenox MacLaren Surgical Corporation on the topics set forth in Medtronic, Inc.'s February 4, 2015, Notice of Deposition of Lenox MacLaren Surgical Corporation." [#278 at 16].

On April 23, 2015, Defendants also filed their Motion to Compel further interrogatory responses. [#277]. In that motion, Defendants seek supplemental responses from Lenox to Interrogatories Nos. 13 and 14. [#277 at 6-7]. Defendants' Interrogatory No. 13 calls for Lenox to:

> *Identify and fully describe [its] claim that the Medtronic defendants monopolized the Surgical Bone Mill Market, including but not limited to a description of [Lenox's] legal theories, the role of each defendant in the alleged monopolization, and the facts that are the basis of [Lenox's] claim.* [277-5].

Defendants' Interrogatory No. 14 is a mirror image request of Interrogatory No. 13 as to Lenox's attempted monopolization claim. [*Id.*]. Defendants maintain that Lenox, it its original and supplemental responses to Interrogatories Nos. 13 and 14, has not yet responded completely, and should accordingly be ordered to "identify the specific factual basis for its antitrust claims, including identifying particular exclusionary actions, if any, that Lenox alleges were committed by each Defendant." [#277 at 10].

## ANALYSIS

**I.      Standard of Review**

The general test of discoverability is whether the information sought by a discovery request is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This is a broad standard meant to allow the parties to discover the information necessary to prove or disprove their cases. *Bagher v. Auto-Owners Insurance Company*, No. 12–cv–00980–REB–KLM, 2013 WL 5417127, at *5 (D. Colo. Sept. 26, 2013). Upon a showing of "good cause" by the proponent of discovery, an even broader standard of "any matter relevant to the subject matter involved in the action" may be applied. *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009).

Despite the presumptive discoverability of relevant, non-privileged information, when the relevance of a discovery request is not apparent on the face of the request itself, the proponent of discovery bears the burden of making an initial, rebuttable showing of relevance. *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203–WEB, 2007 WL 608343, at *8 n. 20 (D. Kan. Feb. 22, 2007). Moreover, in moving to compel further answers to interrogatories, the burden is on the propounding party to prove that Defendants' answers are incomplete. *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518 (D. Colo. 2009) (citing *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221 (10th Cir. 1976) ("appellees had the burden of proving the answer to their interrogatory was indeed incomplete").

The proper scope of discovery is further bounded by the principles of proportionality. Fed. R. Civ. P. 26(b)(2)(C); *see also Qwest Commc'ns Int'l v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). Indeed, Rule 26(b)(2)(C) allows a court to limit discovery on motion or on its own if it determines that: (1) the discovery sought is unreasonably cumulative or

duplicative, or may be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(a)(2)(C). Exercising its discretion, a trial court may find that discovery into matters not relevant to the case imposes a per se undue burden. *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586–87 (D. Kan. 2008) (finding topics in a 30(b)(6) notice irrelevant and granting a protective order as to those topics). A protective order may "forbid[ ] inquiry into certain matters, or limit[ ] the scope of disclosure or discovery to certain matters." Fed. R. Civ .P. 26(c)(1)(D).

In addition, the court considers the scope of the Rule 30(b)(6) topics as articulated. For a Rule 30(b)(6) deposition to function effectively, "the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Berwick v. Hartford Fire Ins. Co.*, 2012 WL 573939, at *2 (D. Colo. Feb. 21, 2012).

## II. Defendants' Motion for Leave

The deposition notice propounded by Defendants and now before the court consists of 46 topics. Many of these topics are expressly targeted at "[a]ll facts" Lenox may use to buttress contentions Lenox has already advanced, or might later seek to advance, in this litigation. Most of these topics do not bear directly on damages. For example, Topics 21-28 consist of the following specified areas of inquiry:

> 21. All facts and sources of information upon which Lenox bases any contention that Medtronic's conduct occurred in or affected interstate commerce.

7

22. All facts and sources of information upon which Lenox bases any contention that Lenox was injured in its business or property because of Medtronic's allegedly anticompetitive conduct.

23. All facts and sources of information upon which Lenox bases any contention that Medtronic had or has the power to maintain prices in the alleged Surgical Bone Mill Market above a competitive level for a significant period of time or the ability to exclude competition from the alleged Surgical Bone Mill Market.

24. With respect to the alleged Surgical Bone Mill Market, all facts and sources of information upon which Lenox bases any contention regarding market share, market share trends, barriers to entry, entry and exit by other companies, and the number and size of other competitors.

25. All facts and sources of information upon which Lenox bases any contention that Medtronic had or has the ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time.

26. All facts and sources of information upon which Lenox bases any contention that Medtronic engaged in anticompetitive conduct.

27. All facts and sources of information upon which Lenox bases any contention that Medtronic had or has a specific intent to acquire or maintain monopoly power through anticompetitive means as opposed to an intent to compete on the merits and protect consumers from the defective Lenox MacLaren Surgical Bone Mills.

28. All facts and sources of information upon which Lenox bases any contention that the natural and probable consequence of Medtronic's conduct in the alleged Surgical Bone Mill Market was to give Medtronic control over prices and to exclude or destroy competition, and that this was plainly foreseeable by Medtronic.

[#278-4 at 9-10].

While a party may use a Rule 30(b)(6) deposition to elicit an opposing party's contentions and the facts it may rely on to support them, proper use of a corporate deposition is not unbounded. For instance, the use of "contention" 30(b)(6) topics—as opposed to contention interrogatories or requests for admission—may heighten the risks of inadvertent waiver of attorney-client privilege and/or waiver of attorney work-product doctrine protection. *See, e.g.*, *SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y.1992) (precluding corporate representative

testimony on such topics because, in the court's opinion, they "constitute[d] an impermissible attempt by defendant to inquire into the mental processes and strategies of the [party subject to 30(b)(6) notice]"). Moreover, the need to properly educate a corporate representative to extemporaneously and yet competently and reasonably comprehensively detail the entity's positions and all grounds of support as to wide swaths of the litigation can pose a heightened risk of undue burden – particularly in complex cases. *E.E.O.C. v. Original Honeybaked Ham Co. of Georgia, Inc.*, No. 11–cv–02560–MSK–MEH, 2013 WL 435511, at *1 (D. Colo. Feb. 4, 2013) (holding, in passing on topic requesting "[a]ll factual information" in support of particular allegation by the plaintiff, that such a "topic will accomplish nothing on top of what can be obtained using all of the other discovery tools [d]efendant has at its disposal, other than to allow [d]efendant to create an opportunity to argue that, because the Rule 30(b)(6) witness only discussed certain information, [p]laintiff is barred from bringing any other information to the fore either at the dispositive motion stage or at trial. I do not believe this is a proper use of Rule 30(b)(6)."). Indeed, Rule 30 itself requires the 30(b)(6) topics be framed with "reasonable particularity," to ensure that the party subject to notice is able to properly designate and educate a representative witness to provide competent and accurate testimony on behalf of the company. *Castillon v. Corrections Corp. of America, Inc.*, No. 1:12–cv–00559–EJL, 2014 WL 4365317, at *2 (D. Idaho Sept. 02, 2014) ("Topic 9 of Plaintiff's 30(b)(6) deposition notice requires the deponent to testify regarding the 'facts or data CCA contends mitigates the need for a substantial punitive damage verdict in this case.' . . . CCA contends that this topic is not described with reasonable particularity as required by Rule 30(b)(6). . . . The Court agrees. Requiring Defendant to prepare a deponent to testify as to all such matters is overbroad and unduly burdensome.").

Given the complexity of this case, its advanced stage, and the ample opportunities that Defendants have had to pursue the discovery currently sought, the court finds that the 30(b)(6) notice as drafted, with every topic designated to date, places an undue burden on Lenox to attempt to marshal all of its evidence into a single Rule 30(b)(6) deposition.. Indeed, the very first two topics are exactly the type of "blockbuster" discovery requests that the court has found to be unacceptable. Topic No. 1 seeks:

> The relief, including monetary damages, you seek to recover in this case, including the amount of monetary damages you seek and each and every basis for the relief, including monetary damages, you seek.

Topic No. 2 requests:

> All facts and sources of information upon which Lenox bases any contention that Lenox is entitled to actual damages, compensatory damages, treble damages, punitive damages, and attorney fees and costs.

[#278-4 at 5]. *See Grynberg v. Total S.A.*, Case No. 03–cv–01280–WYD–BNB, 2006 WL 1186836, *6-*7 (D. Colo. May 6, 2006). However, this conclusion does not exempt Lenox from a Rule 30(b)(6) deposition altogether. Lenox agreed to produce a 30(b)(6) witness on topics related to the "damages Lenox seeks to recover in this case identified by Defendants in a deposition notice." [#283-2 at 3]. Therefore, the court orders Lenox to designate a 30(b)(6) witness to speak to Topics 1-9 and 11 of Defendants' 30(b)(6) notice, with the caveat that Topics 1 and 2 should be limited to discrete damages theories already articulated by Lenox in this case, either through written discovery or expert reports. Conversely, Lenox should be limited to those same damages theories as this case progresses. I order that the witness be produced to provide seven hours of testimony over the course of a day no later than **June 19, 2015**, absent prior leave of court. The court reminds the Parties obstructionist tactics during depositions will not be tolerated, and Local Practice Rule 30.3 makes clear that prohibited behavior includes any

coaching of the witnesses or interruptions, other than for the purpose of making a succinct objection. Defendants' Motion for Leave is otherwise DENIED.

## III.   Defendants' Motion to Compel

In large part, Defendants' Motion to Compel further interrogatory responses [#277] and Defendants' Reply in support thereof [#303] seem principally concerned with arguing that the contentions and purported facts advanced in Lenox's original responses, even if buttressed by admissible evidence, would fail to survive a dispositive motion aimed at Lenox's theory of enterprise antitrust liability. Because Defendants filed a motion to compel rather than a motion for leave to file an additional summary judgment motion, the court need not now entertain the merits of any such argument. However, Defendants note in passing in their original moving papers that Lenox's supplemental response to the interrogatories at issue included the representation that "To this point, Lenox's record remains that explained in the briefing relating to the summary judgment motion and the appellate record in this case." [#277 at 9]. But as noted in authority cited by Defendants [*id.*], "a party may not merely refer another party to documents hoping the other party will be able to glean the requested information from them." *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 545 (D. Kansas 2006). To the extent Lenox wishes to rely on contentions and evidentiary support to be found in the trial and appellate record of this case, those contentions and facts at issue need to be set forth in Lenox's discovery responses to the extent necessary to provide the reasonably comprehensive responses contemplated by the Federal Rules. Even in instances where a party may permissibly rely upon documents (*i.e.* "business records" rather than briefs and pleadings), instead of a narrative, to respond to interrogatories, the response must identify the specific responsive documents. *See Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D 516, 518-19 (D. Colo. 2009). Thus, the court

orders Lenox to supplement its responses to Defendants' Interrogatories Nos. 13 and 14, consistent with this Order, in the following ways: (1) the response should include all supplemental information provided in prior briefing and/or elsewhere in the trial and/or appellate record; (2) to the extent that Defendants intend to rely upon business records, instead of a narrative to respond to the interrogatory, such documents will be specifically identified, either by Bates number or by particular category; and (3) the response must be signed under oath by the individual(s) providing the information as contemplated by Rule 33(b).

## CONCLUSION

Based on the court's review of the papers and supporting evidence, the oral arguments, and application of the pertinent case law, IT IS HEREBY ORDERED that:

(1) Defendants' Motion for Leave to Take Rule 30(b)(6) Deposition of Lenox MacLaren Surgical Corporation [#278] is GRANTED IN PART and DENIED IN PART;

(2) Accordingly, Lenox shall designate a 30(b)(6) witness to speak to Topics 1-9 and 11 of Defendants' 30(b)(6) notice, and produce the designated corporate representative no later than **June 19, 2015**;

(3) Defendants' Motion to Compel Responses to Interrogatories [#277] is GRANTED IN PART and DENIED IN PART;

(4) Accordingly, Lenox shall provide further supplemental responses to Defendants' Interrogatories Nos. 13 and 14 no later than **June 17, 2015**.

DATED: June 11, 2015.                    BY THE COURT:

/*s/* Nina Y. Wang_____
United States Magistrate Judge